May it please the court, I'm Laura Koenig with the Federal Public Defender here on behalf of Mr. Guzman. In denying Mr. Guzman's collateral attack on the indictment in this case, the District Court improperly limited the scope of United States v. Mendoza-Lopez and the cases that Mendoza-Lopez relies on. In Mendoza-Lopez, Estep, and McCart, the Supreme Court found that the Due Process Clause provides defendants the opportunity to collaterally attack an administrative decision used to establish an essential element in a criminal prosecution where judicial review of that decision was effectively foreclosed. The District Court denied Mr. Guzman the opportunity to adhere to do that and erred in finding that the court did not have jurisdiction to dismiss the challenge. I was intending to move into the Due Process Argument unless the court wants me to address the jurisdiction question first. Due Process requires that Mr. Guzman have the opportunity to collaterally attack. What you're saying is that this isn't an immigration dispute here. This immigration action was the basis for a defense to a criminal action brought against. That is exactly right. And therefore the District Court had jurisdiction on that basis. That's correct. And there was therefore error by the District Court in concluding it didn't have jurisdiction. Absolutely. And the government disputes that or disputes it in its papers. Maybe it won't dispute it when we get up here. Fair enough. We shall see. Because in other words, you're not claiming that you are trying to make a 1326 or you're not claiming that what is the statute that the 1254A. You're not making a 1254A claim. You're making a claim under Mendoza-Lopez. That's correct, Your Honor. Due Process requires that Mr. Guzman have the opportunity to collaterally attack the temporary protected status application. Just to make clear, we did not and we are not proceeding under 1326D, which is the statutory remedy for challenging a deportation proceeding. Congress enacted 1326D in response to Mendoza-Lopez because Mendoza-Lopez, the first question that the court answered was, was there a statutory remedy available to Mendoza-Lopez? And the court said no. What's your position on the due process? Do we have to overrule Smith v. Ashcroft? No, I don't think we have to overrule Smith v. Ashcroft. And there's several different reasons for that. One, and if I'm not answering the court's question as I go through, please let me know. My point is that we have a discretionary interest and the limits of due process rights are for those that are set forth in that case. And we have here, as I understand the statute, the TPS statute, that's a discretionary option related to deportation. So how would we be ruling in your favor and not overruling Smith v. Ashcroft? We have to look at the differences in the types of discretionary decisions that are at issue. In Smith and also in Wilson, which the government really didn't cite, but I'm aware involve the same question. The relief that was sought in Smith and in Wilson is 212C relief, which is an equitable form of relief essentially, where once the statutory requirements for seven years of presence and a few additional requirements are met, the court then looks at the equities and weighs them out and decides whether or not the person should get the relief sought. There is almost no limit on the discretion that the immigration judge has. I shouldn't say no limit. There are very few limits that the immigration judge has in imposing or denying 212C relief. And that is very different than what we have here. Temporary protected status is a discretionary decision in the sense that the attorney general under 1254A.B. has discretion as to whether or not to designate a particular country as making its citizens eligible for this type of relief. The statute, though... Excuse me. I thought there was an easier, this all may be right, an easier way to distinguish Smith in this case because Smith itself distinguished Mendoza-Lopez saying that the outcome of the administrative proceeding is used there in Mendoza-Lopez as an element for criminal conviction. That would be, it seems to me, you'd wrap yourself around that. Yes. I'm sorry. I don't mean to lose the court. I need all the help I can get on this case. It is a complex issue. And so in Smith, the court in Smith clearly distinguished the proposition in Smith that was being discussed as whether or not the court could review the discretionary decision in the context of whether or not to provide the relief sought in 212C. It was a habeas petition. The petitioner in Smith was seeking to obtain 212C relief. And as we've just clarified, that is not what we're seeking here. And so when the district court, when this court in Smith analyzed Mendoza-Lopez, it specifically said that it is essential when the outcome of the administrative proceeding is used as an element for criminal convictions, that sets aside the question and makes Smith different than what Mendoza-Lopez was considering. And that's because administrative proceedings do not have the same level of protections that are granted under the Constitution to criminal proceedings. Just in case it comes up, to get back to Judge Quattlebaum, in terms of the discretion, once you are eligible for TPS, there is very little discretion given. And that is very similar to the case that the Smith court relied on, Millett, which was involving discretionary benefits in a retirement system. And in that case, this court found that although there is an element of discretion in the sense that what benefits are to be granted is sort of discretionary, once a member of that retirement system is eligible, deemed eligible, then the limits of discretion are denied. And that's the situation we have in this case. 1254A sets out the requirements for entitlement, which is the residence and the residency requirements and the presence requirements, which as the party stipulated, Mr. Guzman had met. And so going back to Mendoza-Lopez, when we look at the holding of Mendoza-Lopez and the cases it relied on, it talked about a broader due process requirement in a criminal context to challenge an administrative decision. It used the phrases administrative proceeding, administrative order, and administrative determination at least eight times in the majority opinion. The government had in earlier proceedings in its briefs in the case and the district court characterized Mendoza-Lopez as strictly limited to deportation proceedings. And I submit that that is not the case. In this case, the due process... The district court in your case. In my case, yes. The due process violation here is that Mr. Guzman is being criminally held liable right now because he was removed when he was eligible for temporary protected status and was unjustly denied. He was denied unjustly because of his attorney's malfeasance in submitting an application materials incorrectly and not responding to the USCIS's letter for request for further information. And that caused USCIS to deem him improperly ineligible when in fact all of the information that was needed was in his immigration file already. The essential element that this goes to is the deportation element of 1326A. So tell me what was fundamentally unfair? What was fundamentally unfair is that he was denied... He was improperly deemed ineligible for temporary protected status. Well, that's not unfair. That's the conclusion that you are opposing. But what was unfair about that, reaching that conclusion? The unfairness was he has a due process right to have a fair administration of his application. For a discretionary status? For a discretionary status that is discretionary at the outset, but once he is determined to be eligible, it becomes much less discretionary. But it can still be revoked? Correct. It can absolutely still be revoked, yes. Okay, so what's unfair in the process? So what is unfair in the process is that his attorney, there is evidence in the record and both parties stipulated that the immigration, that evidence existed that would deem him eligible for this type of status. It was in the record, but it wasn't, as I recall, facial. It would have required going through the record to find. That's correct. And so his attorney was malfeasance. I mean, he had ineffective assistance and counsel. Yeah, but you don't make that argument. In the record, Your Honor. Yeah, you did argue this to court, but it's not here, right? It is not here in the sense of... It's not in your statement of issues. It is not in the statement of issues. So we don't have that. Okay, so what other unfairness is there? The unfairness, Your Honor, is that we do have this in the briefs in terms of, it was Any attorney of any worth would have responded to that 2003 letter with the evidence that clearly exists in the universe of information because it was, we know it was there. We know it existed. Terry, go ahead. You keep, excuse me, you keep the roadblocks. You don't allege that the denial of TPS was in a proceeding in which it was denied an opportunity for judicial review, nor is it particularly clear to me, nor are you identifying that I can see how he was deprived of due process or fundamental unfairness. He did not exhaust his administrative remedies. Well, and so... And nor was he denied an opportunity for judicial review. So I'm still grappling with the fundamental unfairness in the denial of TPS. Even before you get to the problem, or at least the... Government's argument. Argument that he's not challenging removal. Right, he's not challenging the removal. Because in this case, the fact pattern is highly unusual. I've talked... And you don't even, I mean, there's so many barriers. You don't even get to the removal issue. Or before, to overcome before you get to the removal. Well, and so the removal issue is the first thing that happens in the timeline in this case. He's ordered removed in March of 2000. But he's not challenging the removal. And he couldn't. There was no basis for him to challenge the actual removal itself. So the only thing he's doing is saying that he should have had a right, and the district judge had jurisdiction, to challenge the criminal prosecution. Put up this defense that he has. Correct. And so when... Okay, so assume we agree with you on that. Right, so once we get... In terms of addressing what he has to prove, then I think it's easier to talk about judicial review and exhaustion. The predicate is for an alien who has been removed. Right, and so that element requires two pieces. So you can challenge... The essential element is removal. Right, and that requires two findings. One, that there was a deportation proceeding, and then two, a physical removal. So we are not challenging the fact that a deportation proceeding happened and that an order of removal was entered. What we are challenging... But he did not... I mean, but he remained in the country after the unchallenged removal. He did. And so from 2000 until 2007, when he was removed, he remained in the country. And so what the piece of our argument is, is that had he been granted temporary protected status, that would give him a bar to removal under the statute. Well, it would have... It might have given him... It would have given him exactly what it says, temporary protected status. Correct. And so what we're looking at is a timeline that is fixed in this case. We have the removal that happened in 2007. And so in 2007 is when he was removed. But for that removal, which he did... The court could not... He would not be able to be prosecuted in district court under 1326, but for that physical removal. Right. And so it's only the physical removal aspect of that element that we are... This whole argument relates to. Okay. I'm sorry. No, please. No, I've got that. I hear you on that. But I come back to my question about what was the fundamental unfairness. And so the fundamental unfairness, Your Honor, is his attorney's malfeasance in submitting the materials incorrectly. He does have a right to have adequate representation, not on the government's dime under the Sixth Amendment. This is a Fifth Amendment due process right to have his application fairly considered. So you're saying that the government should have been required to go beyond the submission that he made to review the entire information? Well, what I'm arguing, Your Honor, is that his attorney first should have submitted that information. Right. So what did the government do wrong? And so... Well, the government... The state action at issue in this case is the government's prosecution of Mr. Guzman under 1326. That's the state action at issue in this case. The state action... I've got that. And so... And so... I'm sorry. No. So when he... Because that information was... The attorney did not respond. I see my time is up. Do you want me to finish the question? No, I think you can listen to what the government has to say and then respond. Thank you, Your Honor. And sort of be thinking about... I mean, I think you know my issue anyway. Thank you. Thank you, Your Honor. May it please the Court. My goal, as always this morning, Your Honors, is to try to be as helpful as possible. And the way I think I can do that is to try to frame the argument here in terms of doctrinal first principles. Because I think once the structure of the doctrine is clear, the fatal barriers facing the defendant's argument are also clear. Okay. So the very first principle is jurisdiction, right? I was actually going to start with Mendoza-Lopez, Your Honor, because I think that's a way into the jurisdictional question. Fine. So in 1987, the Supreme Court, in an opinion by Justice Marshall, decides Mendoza-Lopez, where it holds that even though Congress did not intend for a 1326 defendant to be able to collaterally attack the prior removal, due process demands that a 1326 illegal reentry defendant be able to do so. In Mendoza-Lopez, the Supreme Court relies on a series of cases, including Estette and McCart, that all stand for one proposition, which is if the government is going to criminally prosecute a person based on something that happened in an administrative proceeding, there has to be some kind of review of attendance to due process principles in that proceeding. Congress then enacts 1326D in 1996, and this court in Moreno Tapia says that 1326D codifies Mendoza-Lopez. Now, that's critical, because in the government's view, the way the defendant has framed this argument, which is that there is a due process right outside of 1326D review, cannot possibly be correct. The government is not prosecuting this defendant for the crime of being present in the country after having been denied due process. So what if tomorrow the government, the United States Congress, would abolish 1326D? Are you saying that the Supreme Court case would not stand? I mean, that is a ridiculous argument. Oh, no, Your Honor, what we're saying is something much more... We may have said it codified it, it may do that, but the Supreme Court case still stands there. Of course it does. And he is making his claim under the Supreme Court case, not under 1326D. Let me perhaps phrase it a little bit differently. Okay. I am not aware of any case that has said that the three-factor review in 1326D doesn't cover the field for purposes of the concerns of Mendoza-Lopez. So I think properly framed, the defendant's argument has to be, I am being prosecuted for being removed and then reentering. I should have been able to raise my TPS status as a defense in the removal proceeding, and my inability to do that violated due process. And I think once the argument is framed that way, there are two ways that the court could go. The most aggressive way would be to say, you have no right to raise what is in effect a discretionary affirmative defense in the context of a 1326D or a due process analysis. And this court essentially suggested as much... He's not making a 1326D defense. He's making a Mendoza-Lopez defense, which is a constitutional defense. I mean, frankly, I really just don't understand the government. I don't think it's critical to your case, but I really don't understand your jurisdictional argument. So let's set aside 1326D altogether, Judge Motz. What I was attempting to say is that the court could hold, as a matter of due process straight up, purely under Mendoza-Lopez... They did hold that. There's no right to raise a discretionary form of relief as a defense to removal. In Cisneros-Garcia... Yeah, but they didn't... The court never held that. The court... We have Mendoza-Lopez. Mendoza-Lopez is good law. We don't have anybody, anybody suggesting that Mendoza-Lopez, except the government in this case, suggesting Mendoza-Lopez is not good law. I would direct your attention, Your Honor, to Cisneros-Garcia, which is an unpublished opinion of this court. It's cited at page 41. Well, you know what? I would rather go with a published Supreme Court opinion that the Supreme Court has not overruled than an unpublished opinion from this court. Call me crazy. No, Your Honor. I totally understand Your Honor's concern. So let's go at it the other way. Let's talk about due process straight up. Well, let's just assume that there is jurisdiction here, just for purposes of it. And then you can go back. If you think it's critical to your case here to say that there's no jurisdiction, proceed. If you think you can win without saying there's no jurisdiction, then proceed. And I will. Okay. The question is, was the defendant denied some process that was due? In the course of his TPS denial, the government's answer to that question is no. Typically, a due process case will turn on a number of factors, including exhaustion of administrative remedies and judicial review. And in the government's view, the defendant was not denied any of those indicia of due process here. So let me explain why. First, the defendant had a right to appeal the denial from USCIS. There's an administrative mechanism that goes to something called the Administrative Appeal Unit within the Department of Justice. That option was available. It was not taken advantage of. Then, in 2007, the defendant is held in ICE custody for six weeks before he is ultimately removed. At any point while he's being held in ICE custody, he could have filed a motion to reopen with the initial immigration judge from the 2000 proceeding. On the grounds that I ought to have been accorded TPS status and I was not. No such motion was filed. Are you familiar with the principle in the law that there are alternative remedies? Yes, Your Honor. Okay. So I'm not really sure where this narration gets you, but I'm sure you'll be getting there. I'm trying to make the following assertion. It is not a denial of due process. So you're going to the ends now. That's fair. That's what I asked the government about. I hear you on that. And I apologize for the confusion. And those are purposes. Yes. There has to have been an exhaustion of remedies. Is that where you're going? I would phrase it very slightly differently. I think I'm just having a little trouble. I thought I understood your argument better before you started explaining it. And that is a failure on my part, and I apologize, Your Honor. Mendoza-Lopez actually only addresses a narrow piece of the rights protected by Fifth Amendment due process. It says there has to be some judicial review because the facts in Mendoza-Lopez involved a group removal proceeding where the court said that the district court judge had failed to adequately apprise the assembled group of detainees about the right to appeal the removal. And so Mendoza-Lopez only turns on a sliver of what the Fifth Amendment protects. Your Honor is completely correct that typically when we analyze a due process question, we also consider exhaustion of administrative remedies because courts typically say that if you haven't exhausted your administrative remedies, then you haven't been denied some fair process to which you are entitled. And so, Judge Motz, in discussing the various remedies that this defendant had, I was simply trying to make that point that there was no denial of due process insofar as he had an opportunity, multiple avenues, to raise the TPS issue, and he didn't. Now, over the course of litigating this case, defense counsel has argued that those were not real administrative avenues for relief or did not provide an actual mechanism for judicial review because there's typically a 90-day deadline to reopen an immigration proceeding and that had long passed. But this court has recognized that in immigration proceedings, principles of equitable tolling apply, including principles of equitable tolling based on ineffective assistance of counsel. The court has said that in Lawrence against Lynch and Cusk against Holder. So at any point, the defendant well past the 90-day deadline as a matter of due process could have filed something with the initial immigration judge that said, I didn't realize until now that my TPS application was denied. That was because the relationship with my counsel broke down on equitable grounds you ought to reopen. That didn't happen as well. And for that reason, I also want to turn for a moment to the notion of what happens in a due process case when a defendant simply has not raised the right that he then attempts to raise later. Because that's essentially what happened in this case. There was no attempt between 2004 and 2007 for this defendant to seek further review of his TPS application and he never raised the issue when he was held in custody in 2007. I think Mendoza-Lopez is very instructive on this because the dissent in Mendoza-Lopez spends a good deal of energy on a case called Lewis where the Supreme Court said that it doesn't matter if there was some sort of constitutional infirmity in a prior conviction. A felon in possession conviction can still go forward because you would have had the right to contest the underlying predicate defense on direct appeal or in habeas. And in Mendoza-Lopez what the majority says is that if there had been adequate opportunity for judicial review of what had happened to the Lewis problem. In the government's view that is precisely the situation we have in front of us now. This defendant could have appealed the denial of his TPS application in the period between 2004 and 2007. He did not. He then could have brought it up as a ground to reopen the immigration proceeding in 2007. He did not. So there were essentially two opportunities for this defendant to raise the TPS issue and he failed to do so. And in the government's view, Mendoza-Lopez How many opportunities were there available for him to raise this issue as a defense to a criminal charge? This goes back to the beginning and I understand I totally understand The defendant has some very substantial arguments here but not the ones they're making. Here's the shortest answer Was the denial of the TPS status an element of the criminal prosecution? No, it was not. It's an affirmative defense. It's an affirmative defense to removal. That's the point I was making earlier. It's an affirmative defense to the criminal charge. It is not, Your Honor. Okay. That's the government's argument. It's simply not in the nature of a defense to the charge. It's a defense to the fact that he was removed at all, which is I think what I heard my colleague on the other side say at the lectern a few moments before I stood up. And if that's true, then the due process analysis has to be in the period between 2004 and 2007 where you denied process that was due to you somehow. I did actually, I think as I understand it the prior removal it is the prior removal that's the element of the crime. That is correct. So it would be the prior removal. And then the due process inquiry I think would have to be was the defendant denied due process in his removal proceedings because he ought to have had a TPS That's the element that makes it that's the element that supports the underlying prosecution. Precisely the point that I was making. And gives you jurisdiction. Let me address the jurisdictional question because you raised it at the beginning Judge Watson, I think it's important. I think you've addressed it and just don't agree with me. No, it's a little bit more subtle than that. Which is to say the following the district court here I think was completely correct to say that district courts do not have jurisdiction to entertain what is in essence an action for a declaratory judgment saying I should have TPS protection give it to me. That has to be done in the administrative proceeding. Because it's only the removal, the criminal prosecution hinges on the removal. And so what I was going to say Judge Duncan is that TPS is reviewed by federal courts all the time. It's reviewed in the context of removal. So there are numerous opinions from this court including Cervantes against Holder which is a published opinion in 2010 where a defendant raised TPS as a defense to removal in removal proceedings. He then appealed to the BIA. He lost. He did what often happens in those cases he filed an appeal to this court from a final order of removal and then this court assessed whether or not he ought to have been granted TPS. So there are circumstances where the court can consider the question of whether the immigration authorities acted improperly by denying TPS but there has to be some other jurisdictional hook. And this gets back to the colloquy that I was having with Judge Duncan. Here the jurisdictional hook has to be that an element of the crime is removal. He's trying to collaterally attack that. The way he's trying to collaterally attack that is to say I was denied the ability to raise TPS as a defense. And in the government's view he's simply shown that he wasn't denied He was afforded every process that's due to him under the regulations governing the removal proceedings. I think it is helpful I spoke a moment ago about administrative exhaustion and how there were multiple avenues to administratively exhaust here that were not taken. There are two additional follow up points about whether this defendant was in fact denied any due process at all. The first is there is judicial review available. The Supreme Court has held twice, most recently in the Modak case that federal courts of appeals have jurisdiction to hear denials of motions to reopen in immigration proceedings. Which means that if this defendant in 2007 had sought to reopen his immigration proceeding on the ground that he had been improperly denied TPS status and he had appealed to the BIA and lost before he was removed that could have come to this court. And this court could have reviewed whether denial of TPS was denied. Because he's not trying to collaterally challenge an underlying removal order or proceeding in a criminal prosecution where the prior removal is an element of the process. That's exactly right. Mendoza-Lopez stands for the proposition that you have to be able to collaterally attack the removal. That's the crux of the argument in response to the government position on the Mendoza position that the issue here is not the underlying removal order. Right. And the I attempted to say at the beginning of the argument and I think now that we've worked through the process analysis it perhaps makes more sense now. Actually that made perfect sense to me all along. I appreciate that Judge Duncan. I guess I was seeing it differently than we were articulating it differently. Well and to be fair I think a fair assessment of the record is that there precisely because these are abstruse issues the parties talking past each other the district court talking past the defense counsel's argument it can be hard to say what's actually at stake but I think your honor is exactly right. What has to be at stake is the removal and then the due process question is were you denied the ability to raise the TPS issue in the removal context and the answer has to be no based on the facts we have here. I wanted to make one additional point. The court correctly stated I think a moment ago that ineffective assistance as the due process issue doesn't really appear in my friend on the other side's briefing. In so far as the court wants to consider it I wanted to take a moment to zero in on the nature of that doctrine because it's important to distinguish two things. This court has held in a published opinion that was later vacated and not revisited that there is no 6th amendment style due process right to counsel in immigration proceedings. The BIA itself in a number of published opinions has recognized a 5th amendment due process right to effective counsel. In a case called Lazada which this court has discussed numerous times in published opinions including for example Stewart against INS in 1999. But the Lazada standard of ineffective assistance puts the burden on the detainee to make a showing, an affirmative showing through affidavits or other proof that counsel was ineffective. So even if we view this through did the IJ or the BIA or the removal process somehow deny this defendant due process because his counsel was ineffective? The defendant can't even meet the burden of proof that would be attended to a removal. That's not the defendant's argument. Is it? I think throughout when pressed on why due process was denied. The defendant comes back again and again to denial of counsel. I'm sorry I'm not I think my friend on the other side just raised the ineffective assistance issue at the podium and the court gently said well you seem to have moved away from that. I just don't see it as a statement. I simply wanted to make this fundamental point which is there's no proof at all. To the extent that the district court was asked to infer denial of due process on the basis of ineffective counsel. It was based on inferences from documents alone. There was no affirmative showing and that affirmative showing is required in this context. Because this defendant had an opportunity to raise the denial of his TPS application in the context of his removal proceedings and did not either exhaust his administrative remedies or was in any way denied the opportunity for judicial review. His removal proceedings were entirely consistent with Mendoza-Lopez and the Fifth Amendment and for that reason the government believes that this challenge must fail and that judgment below should be affirmed. Thank you. I'm afraid maybe we'll have to do jurisdiction again. That's alright. In terms of going through the jurisdictional analysis I want to start with the court, the district court held that 8 U.S.C. 1252 A.D. denied the district court jurisdiction to hear the challenge. And that section, as this court has already held in Lee v. U.S.C. Citizenship and Immigration Services applies only in the context of removal proceedings. I want to emphasize that this fact pattern here is the only one of its kind that I have ever seen or heard of in the many immigration attorneys that I discussed this argument with in preparing the original motion. TPS, temporary protected status, is the only relief that I'm aware of in the United States. It applies after the person has entered the country. All other forms have to be either raised after the person has already had a removal proceeding and a removal order has been entered. Every other form of relief must be raised in the removal proceeding or the factual grounds had to have arisen before the removal proceeding. And so when we're talking about this situation, because we have a situation here where the affirmative defense for removal arose after the deportation proceeding itself. And so when we talk about the government's arguments about the jurisdiction, that 1252 A2D, which does provide this court and only this court, the courts of appeals, jurisdiction to hear an appeal of a denial of temporary protected status, it has to happen in the context of removal proceedings. This court has already held that that's... There was an opportunity to appeal the denial of the application for TPS status. Within the administrative context, is that what the court is referring to? Yes. And so that's... I'm sorry. No, go ahead. And so that's where the affirmative assistance of counsel also comes in because the court... Which you didn't raise in your statement of issues, but the letter included the notice not only included the notice of opportunity to appeal, and it also included the appropriate form. It did. And that was mailed to his attorney. There's no evidence in the record that it was also separately sent to Mr. Guzman. And so as we've indicated, I don't think I I don't believe that the due process argument... And then he was... He came into state custody and was removed and he did not challenge, appeal, or challenge     that's the case. And I'm not sure that that's the case. Even though he received some assistance from the consulate? Well, the consulate assistance is simply just to allow him to make a call to the consulate. And so it is not... When... What happened in this case is the removal proceeding, the only removal proceeding that happened was in 2000. What the result of that was is there was a warrant that was outstanding from Mr. Guzman based on the order of removal. The only thing that happened in 2007 was the execution of that warrant. There was no further... There was not a reopening of the removal proceedings. There were no further removal proceedings. It was simply just the execution of the warrant in 2007. So to the extent that... So you're saying he had no opportunity to challenge? That's correct, because it was simply just the execution of the warrant. And so when we talk about exhaustion, I do want to emphasize that Mendoza-Lopez and the due process right that Mendoza-Lopez identified to collaterally attack administrative decisions within the criminal context did not specifically... You keep saying it and it doesn't. It's pretty... circumscribed. It says you collaterally challenge an underlying removal order where that removal is an element of crime. It doesn't... It's not phrased quite as broadly as underlying administrative proceedings. Well, if you look at the opinion there, like I've indicated, there are eight times at least in the majority opinion where the phrase is administrative proceeding, administrative order, and administrative determination are made. And within the cases that it relies on... I mean, Mendoza-Lopez didn't even draw from immigration cases. It drew from draft evasion cases in a completely different context to identify this right. But those were still... Those draft cases, to the extent we talk about those, still were talking about the underlying order that was the defense in the criminal case. The underlying decision, and I see I'm out of time if I can't answer the court's question. The underlying decision. I mean, in that case there was a board, which is actually more similar to the facts that we have here because in that situation there was a board, not a court, but a board that was determining whether or not certain persons could get exemptions for military service. And just like the temporary status application, they had to make determinations of eligibility. And so I do think that the Estep and McCart cases are actually more factually similar in terms of its administrative issue. And I thank the court for its time. Thank you. We will ask our clerk to adjourn court for us and then come down and greet the lawyers. This honorable court stands adjourned, sign, die. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Allyson K. Duncan, A. Marvin Quattlebaum Jr.